Let's proceed with our 11-30 case, excuse me, our 11 o'clock case. We've got one left for oral argument. Reed v. Country Place. Thank you. All right, we've got Mr. Horgan for the appellate. And for the appellate, I see that you've split up your time, which is fine. You need to keep track of that, though, yourselves. All right, very good. Please proceed, counsel. My name is William Horgan. As you know, I represent Country Place-Apartments. And this case arises out of a slip-and-fall that took place on Christmas Eve in 2010. I have an apartment complex in Moico, and I don't know if the photographs are sufficient to really lay out the details. I'll just give a quick geographical view of this. This is an apartment complex that has a number of buildings that are broken up into two units combined, joined by a common roof. In this particular building, where this particular accident took place, there's a parking lot. Then adjoining the parking lot, there's a sidewalk that serves as the parking lot. Then there's a grassy area, and dividing the grassy area is what we've been calling a ramp or a walk. It's a slope, gently sloped sidewalk that goes up to a concrete pad, which runs continuously into the apartment complex and services the apartments on both sides. There's a gutter that runs across the roof because the roof over the, that conjoins the two buildings, pitches towards the front and back of the building. And there's a gutter at that roof. It's alleged by my clients that at the time that they were there visiting their sick aunt, that this gutter, that it was inclement weather, and this gutter had dripped water to the point that the water was running underneath the snow down the ramp and causing unnatural accumulation. We have extensively taken depositions in this case, and there are just a certain number of witnesses that this definitely needs to be considered when considering what we're dealing with here. There is an employee of the apartment complex, and her name was, let me get my light folder here. Tasha List. Tasha List was the resident manager, and what she testified to basically is that on the day in question, she recalls some of it, not all of the facts regarding the day, but she knows that when there is a call for inclement weather, she would routinely distribute ice melt or some sort of thing, and she would do it on the sidewalks and on the ramp area where the accident happened. And because it was Christmas Eve, she does recall that she left work at around 3 o'clock in the afternoon to go to Springfield to visit with her family and friends for Christmas Eve. So not that she recalls having spread ice melt, although it's something she always would have done. It would have been performed at some time before she left at 3 o'clock, and she was the manager for this complex, which included probably four or five buildings. It was a fairly large complex, and so had she done it, we're not too sure what timing she would have applied to this test. We do know from the testimony of the witnesses, and all the witnesses, Your Honors, are my clients and his family members. There were no third-party witnesses there. We know that my client, Terry Reed, arrived at the apartment complex sometime around 5 or 6 o'clock in the evening. We know from his testimony, the testimony of his wife and his daughter and two sons, that it had been a freezing rain and sleep mix, which was causing a surface, which was causing the sleep to stick to the freezing rain, which had a texture or a contour to it. We know that Terry Reed went to the apartment complex to visit his aunt, and we know that because his aunt was on oxygen, and these people are smokers, that they had to smoke outside the apartment for obvious reasons, so they were out there and they were observing the constant dripping of the water off of this gutter, which caused the condition of ice. Now, we have one other witness who is a third-party defendant. That's Mr. Powell. Mr. Powell's company, he's a fully-employed person, was hired by the apartment complex to do a variety of things around and clean out gutters, probably mow lawns in the summertime, and take care of snow in the wintertime. He has no recollection of what he did on that day. The only thing he has is an invoice that he sent to the apartment complex for snow removal on that day at 6 o'clock. It doesn't specify a.m. or p.m. Now, Tosh List would not have been there at either time, whether it was at 6 in the morning or 6 in the evening, so it's very hard to tell when he would have been there, but I think the evidence tends to point towards the evening because I don't think that there were conditions in the morning that were conducive to snow removal. All of the witnesses that have testified that were there testified fairly similarly, and there's variances in their testimony, which you would expect, because nobody perceives things and witnesses things the same way. But it's very clear that if there was any snow removal that had been done at the time of this occurrence, it was to the parking lot and it was to the sidewalk running adjacent to the parking lot, and there were no snow removal efforts made whatsoever that were perceivable to the area where the water was dripping or to the ramp where Terry Reed fell. Terry Reed left his aunt's apartment sometime between 9.30 and 10. He went to go get his car. He slipped on a sheet of ice, and that's been described by many of the witnesses. It's a sheet of glare ice on that ramp, which is inconsistent with the natural accumulation of freezing rain and sleet that had fallen prior to the arrival of the snowstorm, which took place when Terry and his wife and his children were visiting their aunt. So what we have here is we have a complaint that was filed. It's been amended a number of times, and the last amendment was the third amendment complaint, which is attached as an exhibit to the advance briefs, which alleges that there was an unnatural accumulation of ice or snow that caused the condition upon which Mr. Reed fell and was injured. Summary judgment motions were filed by both parties, and just as I'm sure you're aware of this, we filed a lawsuit against the owners. The owners filed a lawsuit against the snow removal company, and summary judgment motions were brought by both defendants and third-party defendants, basically alleging a couple of things, one that there is immunity that comes under the Snow and Ice Removal Act, and also another allegation which has never been decided by the trial court, which is that we are unable, based upon the testimony that we have induced of that condition, to establish that the accumulation was unnatural. I don't believe that issue was before this court. I will discuss it a little later, or I would feel remiss if I didn't discuss that. But the Snow and Ice Removal Act is a very short act. Let me ask you if it makes a difference under the Snow and Ice Removal Act if it was natural or unnatural. How broad is that act? Well, the thing is this. I think it doesn't make any difference. I believe that when you create a condition that creates a damage or an unnatural accumulation, you can be liable for that under common law, only exclusively if you did some remedial efforts to prevent that. And that's what kind of comes into it. There's three cases we need to discuss here. It's the Green case in the 4th District, the Ryan case in the 2nd District, and the Hyatt case in the 1st District, which I asked the court to take into consideration as it was decided, I think, in October or November. The act is very specific. Was that in your brief, counsel? What? The Hyatt case? Is it in the brief? It's not in the brief. It was decided after the case was completely briefed. I have a copy of it. It's a supplemented case, I believe. Yeah. Is it okay? You gave me leave to file it. Yes. Okay. So you have it. It came down very quickly. But the act is in two parts. And basically, the second section, section 2, says that any owner, lessor, occupant, or other person in charge of any residential property or any agents or persons engaged by such party who removes or attempts to move snow from sidewalks shall not be liable for any personal injuries allegedly caused by the snowy or icy condition of the sidewalk, and this is key, resulting from his or her acts or omissions. There's nothing in our complaint that suggests that the injury occurred due to the acts or omissions of the snow removal efforts. In fact, everything that we've seen from the evidence we can deduce is that there were no snow removal efforts that had any effect on this condition. And one thing when we look at this act, we've got to ask ourselves, how far back and how remote in time are we going to do snow removal efforts as we apply to an occurrence? The only snow removal efforts that we even have an idea that might have taken place is the attempt by the agent of the apartment complex at some time prior to her departure, some six or seven hours prior to this occurrence, to throw some salt around before she left and went off early for the day. The court in Ryan held that it's kind of an interesting decision, and I've done a lot of work in the second district and I've always found their opinions to be somewhat interesting, but they came up with this notion that there was a more immediate cause of the injury. It was very clear in Ryan that there was water dripping down walls and everything else that was causing this icy condition. And they came up with this notion of an immediate cause. The cause is more immediate of removing the snow, or the negligence of failing to remove is more immediate to the accident than the condition that was created. And of course what this does is a couple of things. One is it just blurs the landscape here. But second of all, what it does is it says to property owners, you know, if you've got some terrible condition here, whatever it may be, and you do just anything whatsoever to attempt to deal with a condition that you're creating that has injured people, then you're immune. You don't have to repair your properties. You don't have to do a thing because you're completely immune from that. Well, let me ask you a question about that. That would only affect snow and ice. In other words, if it melted and you still had a dangerous condition resulting from the same structural issue, you would not have immunity. Yes, that's true. But, you know, a lot less people slip on water than slip on ice. You know, ice is really an inherently dangerous condition to pedestrians. And so you have a point, but if they're not going to fix it and they're not going to be held liable for when the condition becomes most dangerous to pedestrians in an area where pedestrians are supposed to be, then they're skating. But when I look at this argument of immediate condition, I think that what the second district is actually doing is they're doing a little sachet around what we always have considered intervening acts. What they're suggesting is that the non- or the negligent removal of snow or ice somehow is an intervening act from the creation of the condition in the first place. And, you know, I've done my brief. You know, we know that maybe more than one proximate cause of an injury. And if two wholly independent acts by independent parties, neither bearing to the other any relation or control cause an injury, by one creating the occasion or condition upon which the other operates, the act or omission which places the dangerous agency in operation is the efficient intervening cause that breaks the causal connection that makes the other act or omission the remote and not the proximate cause. However, the reason why the second district didn't say there was an intervening act was intervening acts always involve two independent parties. The action of the second party, you know, you see it in sidewalk cases all the time or curb cases, you know, there's some condition that a city creates that causes somebody to park their car strangely and then somebody else comes in and whacks the car. They want to sue the city and they say, well, you know, you create a condition but it's remote in time. The real intervening cause is the negligence of the driver. So when you look at the second district case, I am of the opinion that, oh, I don't really want to say this but I'm going to anyway, that they were looking to arrive at a result and they found a way to do it. And that's fine. I mean, that's sometimes what courts do but I don't see that the case really sings to the facts. Now, in December of this year, of last year, the appellate court of the first district decided Hilton. And the Green case, they sided with, the Green case was decided before Ryan, which is the second district case. And the Green case says, hey, you know, no allegations of negligence in snow removal. The act doesn't apply, period. It's a straight negligence, you know, defective condition case. And that's a Green thing. Ryan, second district, took umbrage with that and worked their way around with this more immediate cause thing. But the Hilton case is really well-reasoned. Of course, I would agree with it because it supports my position. I think it is a well-reasoned case. And they point out that the act specifically says that the negligent condition has to be, that the snow removal has to be due to their efforts and the efforts have to create the condition that causes the injury. And if the efforts of snow removal don't create the condition that causes the injury, you're not immunized here. And in this case, the only evidence we have, I mean, Terry Rief in the record says, I came out and I was standing in a snowdrift on the sidewalk. You know, he says he walked down the ramp and he slipped and fell and he shoved snow aside, and that's how they saw this slick patch of ice that was inconsistent with anything that could have fallen naturally because they saw what the natural fall was on that day. So what the Hilton case says is that a court cannot construe a statute in derogation of the common law beyond what the words of the statute express or beyond what is necessarily implied from what is expressed. And there's nothing in this act that really says it's going to immunize people for unnatural accumulations of ice that are caused by a condition in your property. And the Hilton case went on to say any legislative intent to abrogate the common law must be clearly and plainly expressed, and we will not presume from ambiguous language an intent to abrogate the common law. So what did they abrogate? They've abrogated the liability upon a residential property owner, and it's not just people who own houses, you know, it's apartment complexes and the rest, from liability for actions which are caused directly as a result of something they have done improperly that's made a condition that causes someone an injury. And that's not what we have in this case. And they went on to say in Green, none of the theories of negligence were based on negligence in snow removal. They had to do with maintenance of gutters, and they ultimately found the plain language of the act does not provide immunity for entries if unnatural accumulation of ice was caused by defective construction or improper or insufficient maintenance. That's just exactly what we have that's alleged here. And they went on and on and on, and it's a good case, and I know you'll read it. And they said that Green, in their opinion, was good law and that the immediate negligence consisting of a theory of the second district was not really well taken. And the appellate court went on in Hyatt to agree with the court in Green, and they went even one step further, which I thought was interesting. They said that the act only immunizes owners for what the owners themselves personally do, not for efforts of people that they hire to remove snow. So if you want to adopt the reasoning in the Hilton case, you may go on from there and say that the snow removal efforts, from all the evidence that we can see, haven't taken place yet. We're hired out to a third-party provider, and then you have issues between, which we have in this case, issues between the owner of the property and the third-party provider as to whether the third-party provider breached a contractual obligation to remove the ice and snow which caused the condition. So that's basically the argument that I have to present with regards to this particular statute, and I appreciate that we've run over time, and I'm not going to call it short just because of that, but I'm not a long talker. The other thing is that the appellate is trying to raise issues that are not properly before this court. They want to suggest that the plaintiffs could not prevail on the theory of unnatural accumulation of ice and snow because they can't establish unnatural accumulation of ice and snow. There is ample testimony that there was water dripping from the gunner. There's ample testimony that the condition underneath that snow was inconsistent with what had fallen naturally, and the only conclusion can be that the water had dripped in that way, and the problem is, let's face it, water dripping underneath snow is very hard to see. When someone falls down, your father falls down and has a serious injury to his leg, and the ambulance is called and people are slipping and sliding right and left. I mean, they said even at the ambulance people were having trouble getting up this slippery ramp, and it wasn't slippery like that when they'd gotten there in the morning or in the late afternoon. But there's sufficient evidence, and I know that nobody seems to like circumstantial evidence, but circumstantial evidence is evidence, and it's to be given the same weight as other evidence, and I love the new jury instruction. I'm sure you've all heard it, but it just doesn't go as far as talking about circumstantial evidence. It talks about if a guy comes into a room and he's got an umbrella and it's wet, you can circumstantially presume that it's raining out. Well, because we've got water dripping in the proximity of where my client fell, because we have ice in a condition that is not consistent with what the weather conditions were on that day, circumstantially the evidence has to be that it was created by something, and we know that there was snow all over the place, so it wasn't caused by the third-party defendant Powell and her snowball weather, because they hadn't been there yet. So circumstantially it was caused by the defective condition, which caused an unnatural accumulation. I'm trying to be brief. I don't want to repeat myself. Any questions? No? Thank you. Thank you. We're next going to hear from professional property management, is that correct? Yes. Emily and also Cross and Powell. We're splitting our time, so I'm going to set my phone up. Hopefully this will work. Throw a towel at me. Can I have one? Can I ask you a question? Sure. Next court. Counsel. My name is Jennifer Wolfe, and I'm representing the defendants, the athletes, and the separate appellants. The case before us is due to a summary judgment motion, which this court then has de novo review, as summary judgment is aimed not to try issues but to determine whether a travel issue exists. This court can affirm the lower court's award of summary judgment based on any grounds. It's not limited to the specific grounds given. Our position is that by granting the summary judgment motion for the owners and the property maintenance company, management company, that the issue of our contribution claim against the maintenance company that we hired to assist with the snow removal and also with clearing out the gutters became moot. However, we did bring a separate appeal that if our summary judgment is reversed because the plaintiff is alleging that the water dripping is due to clogged gutters, we would want our contribution claim against the person who is responsible for cleaning out the gutters to also be tagged along with us so that those issues can be tried at the same time. As you've learned, some of the facts in the case is that the owners and the management company, Tasha List, was out there on the exact same day of this incident spreading salt both in the morning and before she left at 3 o'clock. We also, counsel alluded to, wasn't sure whether our snow removal contractor came out either 6 o'clock in the morning or around 6 o'clock at night. There was references through invoices from other properties that he had serviced that day to suggest that it was in fact 6 p.m. or about there that evening, not in the morning. So that's consistent with plaintiff's view on that. When the plaintiff and his family arrived to visit their sister or their family member, it had been raining and sleeting for over two hours. They were able to walk up this ramp, and we tried to include a colored photo, which is a little cleaner to see, about the sloped ramp that gets up to a cement slab that's at the top. And when they first arrived at around 6 p.m. that evening, it wasn't slippery. There were no sheets of ice. They were able to walk through the misty water, through the sleet, through the rain that had been going on for two hours that day. Then they stayed and visited with their family member for over four hours, and while they were visiting, the sleet and the rain that had been falling had turned to snow. And by the time when they came out, there was snow covering the sidewalks. It was a sheet of ice, as you've already heard. People were slipping all over the place, which is inconsistent with the situation as when they first arrived. And they're saying that how could it be of natural accumulation? It has to have been from some dripping gutter that would drip onto a cement slab, and that slab tilts towards the building, not towards the sidewalk that goes from that slab to the parking area. And none of the, although they claim that they did see the dripping gutter, there's been no complaints made ever to the property owners, to the management company, to the maintenance contractor about a defect or problems or that the allegations that the gutters were dripping are causing some kind of unnatural accumulation or some kind of hazard. They have no direct link that puts the water from where the drips would fall to the location of where the plaintiff fell, which again is probably ten feet or more away. It would have to defy physics and go up the slope of the cement slab that the gutter would fall upon to then travel down the ramp of the sidewalk that he had fallen on. And there is just no evidence, and it's not even circumstantial evidence, because that can't happen. All their, the family's testimony was that they just assumed that this dripping water would have flown underneath the snow that had fallen on top of all the sleet and the rain and the mist that had been present for hours that evening. In fact, it's more of a stretch to say that all the sheet of ice that was formed and how slippery it was all over the place could have even come from this dripping gutter rather than the natural precipitation that was prevalent. There were no icicles that they claimed from dripping. As the temperature drops and the rain and the mist and the sleet turns to snow, so too would the dripping kind of stop where it would freeze and become icicles. With regards to the proximate cause and intervening causes, it shouldn't matter whether intervening causes are related to a same individual or multiple individuals. If you've got an intervening cause, that should be what is relevant. The plaintiff's appellant has admitted that there was freezing rain that evening and that the property owner and the agent that they hired had applied salt that evening. It's incumbent upon the plaintiff to demonstrate facts which would cause a legal duty. I don't even think this court needs to get to whether the act applies or not because we can decide that there's not even a duty so we don't even have to resolve or discuss immunity. The plaintiff has the burden, more than just speculation, which is not a substitution of evidence, that there has to be a direct link from their unnatural water source and the ice that they actually fell on, and they cannot do that. They have no nexus between the dripping water and the location of the fall. They have no expert that can say that the dripping water that would land on the slab that sloped towards the building could have arrived at the location of the fall, and they won't be able to have such expert testimony because, again, the slope from the slab, which would first catch the dripping water, is going in the wrong direction. They don't have any evidence to show that the slope of the sidewalk would have funneled any dripping water towards the direction of where the plaintiff fell. In fact, because it was a sheet of ice and there was ice and frozen water everywhere, that is very consistent with the natural precipitation that had been falling for hours that evening. This court owes no duty to reason some remote possibility of unnatural accumulation. Let me ask you about duty. Sure. The plaintiffs contend that at common law, and I'm going to quote from their brief, a business owes the public the duty of exercising ordinary care in maintaining the premises in a reasonably safe condition. And I'm going to ask you, do you believe that that duty extends to the maintenance of residential premises? Well, that's a common law duty. And, you know, the common law with regards to property management's and owner's responsibility to the safety when it deals with natural accumulations isn't there. They have no obligation or duty to remove natural accumulations. And if they attempt to do so, which they have laid down salt, any negligence of that provides immunity by the Snow and Ice Removal Act. So my next question is, any effort, are you contending that any effort to remove snow and ice then negates any alleged defect? Yes. And I believe that the act consistent with Gallagher and Ryan shows that anyone who attempts to remove snow or ice from the sidewalk shall not be liable for personal injuries caused by the snow or icy conditions resulting from his or her acts or omissions. So unless alleged misconduct was willful and violent. So it's not as the plaintiff alleges that they are completely immune. They're not. Their acts or omissions have to not be willful and wanton. And we don't have willful and wanton in this case. In fact, they agree that our actions and our alleged negligence is not willful and wanton. But in order to survive for that, they would have to show willful and wanton disregard for the dripping gutter or something like that. And then immunity would not have been triggered because their acts or omissions would have been willful and wanton. Let's say there was a dripping gutter and it warmed up and then fell out and slipped on ice. Excuse me. The ice had melted and they slipped on the water. There would be no immunity then and there would be liability, wouldn't there? Well, I don't believe the act would apply because the facts would show that they didn't slip on the snowy or icy condition. So the act only applies to snowy or icy conditions. So if it was water, it would not have been a snowy or icy condition. So the same defect could cause an injury and all you have to do is make some half-hearted attempt and you have immunity. It doesn't matter what you do. If you do anything, there's immunity. Well, there's immunity if those acts or omissions are not willful and wanton. If you can show that they were completely disregarded and meet the standard for willful and wanton behavior, then the immunity doesn't get triggered. So if they're blatantly disregarding a known hazard, then I would believe that the willful and wanton conduct would get triggered and it would prevent the immunity of the statute. So I believe it would be based on, again, what the acts are and are those willful and wanton. And a complete disregard for someone's safety like that possibly could be argued as willful and wanton, but that we don't have those situations here in this case. And also for the proposition that the allegations of the complaint are the only things that control whether or not the act is applicable, the underlying facts have to be what's controlling whether the act applies. You can't have the tail wagging the dog and the act would essentially become meaningless because it would only be determined on what the plaintiff would allege in their complaint. And that's not what would provide for fair justice. It has to be based on the underlying facts. And again, although we do believe the act is triggered in this case and does provide immunity, we don't even have to get that far because there's no duty in the first place because the ice that the plaintiff fell on was a natural accumulation and there is no evidence to suggest that what he fell on was anything other than the natural accumulation. For the reasons argued here and in the briefs, we submit that the condition of the defendant's residential sidewalk is not actionable, both because of the common law, there is no duty because they can't meet the burden of showing that it's an unnatural accumulation, and alternatively also the lower court was correct in that the Snow and Ice Act, Removal Act does apply because the owners took steps to eliminate ice and salt or ice and snow so they engaged in that, the intended persons, their actions were what is included, and the alleged misconduct is not willful and wanton. And in the alternative, should summary judgment be reversed against us, we would ask that defendant or the separate aptly Powell also get reversed, one because the summary judgment against them was moot in the first place and the defendant should be allowed to pursue a contribution claim against the gutter cleaning person based on the plaintiff's allegations that the gutters were clogged. If there's no further questions, I'll turn it over. May it please the court. Counsel, I'm Michael Murphy. I represent the third-party defendant, Greg Powell. I'm asking that the court affirm the summary judgment granted in his favor and against the third-party plaintiffs. One way the court can do that is to affirm the judgment in favor of the defendants because that will extinguish the contribution counterclaim. The arguments made in the trial court by both parties are very similar. All the arguments made by the defendants in support of summary judgment also support summary judgment in support of the third-party defendant. But what I want to focus on, as to Powell specifically, is there are a few unique considerations as to the third-party claim that entitled him to prevail even if this court were to decide in favor of the plaintiffs and against the third-party plaintiffs. In other words, reverse the summary judgment for the defendants. First, under the Snow and Ice Removal Act, Powell is a snow removal contractor. He came and did snow removal activities at the site. Under the plain language of the statute, he qualifies for removal. With respect to the cases interpreting that act, we believe the Bryant case is directly on point. The other cases, the Green and the Murphy-Hilton case, are distinguishable as discussed in the briefs. But even if the court follows the holdings of Green and Murphy-Hilton, which hold that you only look at the allegations of the complaint to determine whether immunity can be invoked as an act, and as to the plaintiffs and defendants, the plaintiffs have stripped away all the allegations in their complaint of snow and ice removal activities on the part of the defendants, so the defendants can't invoke immunity. You can still rule in favor of Mr. Powell because the third-party complaint in this case contains allegations of snow removal efforts by Mr. Powell, so he can still invoke immunity under the act. So even if you follow that up in Bryant cases, Powell can still be entitled to immunity. I also have to address the gutter issue. Mr. Powell was hired to do some work on the gutter. We believe Bryant is on point here, too, with the trolls, and allows Powell to receive summary judgment both with respect to the snow and ice allegations and with respect to the gutter allegations because the more immediate cause was the snow and ice activities. But our position is also that Powell did not have any kind of continuing duty to monitor or maintain these gutters. He was hired to clean them, and he did that on November 30, 2010. He testified that at that time he cleaned everything out of them. I cleaned it all, is what he said. And there's no evidence to dispute that. There's no proof that he didn't clean every leaf and twig out of those gutters at that time. After that time, he didn't have a duty. He had no contractual responsibility. He had no authority from the owners of the premises to go back there and climb up and keep looking in these gutters to see if another leaf had fallen in there. In fact, he wouldn't have been paid for that work if he had done so because he didn't have authority from the owners to do that. He was hired to clean them once a year, and he did that. Once he's done with that, if there was a duty to continually monitor and maintain these gutters to see if more leaves had fallen in there, that duty would fall on the defendants, not on Mr. Powell, because the defendants are the property owners and the containers. Focusing back on the third-party complaint, the third-party plaintiffs alleged that Powell may have truly failed to properly maintain and repair the gutters. It was their work, when Powell filed his motion for summary judgment, to come forward with evidence to support their allegations. Instead, the third-party plaintiffs didn't even respond to Powell's motion for summary judgment. They filed their own summary judgment motion as a plaintiff's claim, but they did not file any response or try to rebut any of Powell's arguments in his motion for summary judgment. They presented no evidence whatsoever that he did not, in fact, properly clean out the gutters on November 30, 2010. They presented no evidence whatsoever that he was asked to, yet failed to, repair the gutters or that there was even any need to repair the gutters. Now, having failed to respond to the trial court on appeal, the only thing they rely upon is pure speculation that there may have been some leaves up in the gutter on December 24, 2010, when the plane fell. And this, in fact, is the same speculation they claim is insufficient for the plaintiffs to rely on for their claims against them. But that's all they have to rely on for their claim against my client, Mr. Powell. They had absolutely no proof supporting their allegations. They presented no proof to the trial court. And, therefore, Mr. Powell was entitled to summary judgment on that additional basis. They didn't present any evidence sufficient to describe summary judgment as their third-party claim against my client. For all those reasons, on behalf of the third-party defendant, Powell, I respectfully request the opinion. Summary judgment in his favor.  Thank you, counsel. Rebuttal argument. That's an interesting point, which perhaps I hadn't addressed properly, but you're correct. I mean, what if, for instance, the water drips off and then freezes? And then nobody does anything to treat that water, that ice, and then it becomes water again. Does the fact that it was originally ice somehow confer immunity for its transformed condition later? Could we back up a little bit? I'm having a little problem with this stuff. Okay. Okay. Did the plaintiff fall down in an area that he alleged that the water ran to? Yes. And now the counsel here is saying that the water runs up to the building and not where he fell. Isn't that a question of fact? Well, it's a question of fact. Summary judgment? That should be decided by a jury. It's not a question of fact. Well, I mean, we're talking about summary judgment, aren't we? Well, we're talking about summary judgment, but the fact of the matter is that's an allegation. That isn't a fact. That's a position that they've taken. They've hired an expert. Well, so it's a question of fact. It's a question of fact. Right. And now then where the person fell was not in an area that was allegedly cleaned at any time, correct? That's correct. So it was a natural accumulation where he fell. Except if the water that fell on that slab actually went in the direction contrary to the element. Which is a question of fact, correct? Yeah. As a question of fact, doesn't that mess up the idea of a summary judgment? Well, I would think so. That's my question. You say it does. Well, we're not here to determine and give weight to various facts and various issues. We're here to decide whether or not, first of all, the trial court erred in deciding that the Snow Range Removal Act created an immunity where, in fact, there was no testimony or no evidence to show that anybody was actually there. Any sooner than, in fact, Mr. Reed says he left his house, the place between 10, 30, and 11, the only snow removal efforts were almost more than half a day late. My question is, were there allegations that there were snow removal efforts ever made in the place where he fell down? Not by me. Not by my client. Affirmatively, they say so, but all they have is an invoice from Mr. Powell, which says that he was out there at 6 o'clock. But we have Terry Reed, we have Carol Reed, we have Jesse Reed, we have Bridget Kinney, and we have one other Reed, all of whom have some conflict in terms of snow removal as to whether the parking lot was clear, whether the sidewalk in front of the parking lot was clear. But they're all pretty clear that the ramp hadn't been touched. So we're talking about no acts taken to remove snow factually. And before you can get to the immunity, you have to determine that there was actually something done there. And Mr. Powell doesn't know what he did or didn't do or when he did or didn't do it, except he sent an invoice at 6 o'clock, and it's a huge apartment complex. And everybody else says there's snow and ice, and the people are slipping only on the ramp. That's the only place that has this condition. And it's not consistent with the freezing rain and sleet that was sticking to the freezing rain that was happening earlier. So the one conclusion that has to be drawn is there's something different with this particular area. And what's different with this area? We've got this gutter. Also, by the way, this is the only place where the property owner puts out a bucket of salt. They have a bucket of salt there for the residents to use. They don't have it in the other apartment buildings, which I think is significant that they knew that this condition was present. Plus, the fact that there are no complaints that are kept or produced doesn't mean this condition didn't exist prior. It's just that nobody bothered to complain about it for one reason or another. So in any event, we have factual questions that really should be before a jury, not before this panel. And I don't believe that the act applies for any number of reasons I've argued previously, and I'm not going to be arguing again. So thank you very much. Thank you, counsel. We'll take this case under advisement. Court will be in recess. All rise.